IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| MICHAEL L. OLSEN, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 1:15-CV-044-BL |
| | § | |
| MYRON L. BATTS, Warden, | § | |
| FCI-Big Spring, | § | |
| Respondent. | § | Assigned to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Before the Court is the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner, Michael L. Olsen, a federal prisoner now confined at the Federal Correctional Institution (FCI) Allenwood in White Deer, Pennsylvania, against Myron L. Batts, Warden of FCI-Big Spring,[1] Respondent. This case has been assigned to the United States Magistrate Judge, but as all parties have not filed a consent to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), the undersigned magistrate judge issues this report and recommendation pursuant to 28 U.S.C. § 636(b) and a standing order of reference. Afer review and consideration of the § 2241 petition and the applicable law, the district judge should deny the petition on the merits.

### I. BACKGROUND and CLAIMS

Petitioner is serving a 188 month term of imprisonment for his 2011 convictions in the United States District Court for the District of Vermont for conspiracy to distribute cocaine and cocaine base, distribution of cocaine base, possession with intent to distribute cocaine, money laundering and aiding and abetting; and obtaining confidential telephone regulations without authorization, and aiding and abetting. *See United States v. Olsen*, No. 2:09-CR-030-WKS (D. Vt.

---

[1] At the time Petitioner filed this suit, he was housed at FCI-Big Spring in Big Spring, Texas.

March 11, 2011 Judgment; May 29, 2015 Order Regarding Motion for Sentence Reduction).

By way of this petition under § 2241, Petitioner challenges a disciplinary proceeding conducted while he was housed at FCI-Fort Dix in New Jersey involving incident report No. 2548842, in which he was charged with the use of narcotics, a Code 112 violation. Respondent's Appendix (App.) (doc. 16) at 4-5. Following a hearing, the disciplinary hearing officer (DHO) found Petitioner committed the prohibited act as charged. *Id.* at 11-12. Petitioner's punishment included loss of various privileges, disciplinary segregation, and loss and forfeiture of 40 days of good conduct time credit. *Id.* at 14. Petitioner contends that his right to due process of law was violated because the results of a urinalysis were intentionally altered by use of a copy machine to reflect a positive result. Petition (doc. 1) at 5. He seeks the expungement of the incident report from his record, restoration of the good conduct time forfeited, and/or a new disciplinary hearing conducted with original or certified color copies of the chain of custody from and lab results. *Id.* at 7.

## II. EXHAUSTION

The record contains evidence through exhibits to Petitioner's memorandum in support of the § 2241 petition that show Petitioner appealed the DHO's decision. Exhibits to Memorandum (doc. 2-1) at 6-12. As acknowledged by the Respondent, Olsen has exhausted his administrative remedies. Response (doc. 15, at 5.)

## III. DISCUSSION

A. Disciplinary Proceeding

On January 31, 2014, while incarcerated at FCI Fort Dix, Olsen was required to provide a urine sample. (Doc. 16 (Incident Report), at 4, § 11.) On February 14, 2014, following BOP's receipt of the positive urinalysis results, Olsen received an incident report charging him with violating BOP

2

disciplinary code 112, use of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff. (*Id.* at §§ 9-13.) The reporting officer stated that on February 14, 2014, he received written notification from an outside contract laboratory (Phamatech Laboratories) that urine specimen number BOP0001947266 had tested positive for Buprenorphine. (*Id.* at § 11.) The reporting officer noted that specimen number BOP0001947266 had been assigned to a urine sample Olsen provided at 10:15 a.m. on January 31, 2014, and that FCI Fort Dix Health Services Department staff had informed the reporting officer that Olsen was not prescribed any medication which could have caused a false positive test result for Buprenorphine. (*Id.*) An investigation of the incident report was conducted on February 14, 2014. (*Id.* at 5, § 22.) The investigator advised Olsen of his right to remain silent during the disciplinary process. (*Id.* at §§ 23-24.) After confirming that he understood this right, Olsen told the investigator that he does not use drugs or get high, that he does not use any medication, that he did not believe the urine was his, and that BOP staff must be messing with him. (*Id.* at § 24.)

Olsen appeared before a Unit Disciplinary Committee (UDC) on February 20, 2014, at which he declined to provide a statement. (*Id.* at 4, §§ 17; 21.) The UDC referred the charge to the Disciplinary Hearing Officer (DHO) for final hearing and disposition. (*Id.* at § 18.B.) Olsen was advised of his rights at the DHO hearing and was afforded the opportunity to request witnesses and obtain the assistance of a staff representative. (*Id.* (Inmate Rights at disciplinary Hearing Form and Notice of Discipline Hearing) at 7-9.) Olsen did not request any witnesses. (*Id.* at 9.) He initially requested the assistance of a staff representative, but waived staff representation when he appeared before the DHO. (*Id.* at 9; (Disciplinary Hearing Officer Report) at 11, § II. C.)

Olsen then appeared before the DHO on March 20, 2014. (*Id.* at 11, § I.B.) At the hearing he

3

provided a statement which the DHO recorded as, "I do not use drugs. I don't think it was my sample." (*Id.* at § III.B.) The DHO showed Olsen a copy of the Chain of Custody Form for Specimen ID NO.: BOP0001947266 and asked if it was his signature on the inmate certification. (*Id.*) Olsen replied, "Yes." (*Id.*)

In addition to the statement of the reporting officer and Olsen's statement, the DHO also considered copies of: a staff memorandum confirming that Olsen was not prescribed any medication which would cause a positive test result for Buprenorphine; the chain of custody form for urine specimen number BOP0001947266; and the Phamatech Laboratories testing report for urine specimen number BOP0001947266, which reflected a positive test result for Buprenorphine. (*Id.* at 12-13; 16-20.) Based on the evidence presented, the DHO concluded that Olsen committed the disciplinary infraction with which he was charged. (*Id.* at 12, § IV.A.) The DHO disallowed 40 days of Olsen's good conduct time; ordered him placed in disciplinary segregation for 15 days, suspended for 90 days; suspended commissary, e-mail, and telephone privileges for 30 days; suspended all visiting privileges for 90 days; and restricted Olsen to receiving visits from immediate family only for an additional 90 days. (*Id.* at 14, § VI.) The DHO provided a written explanation for the sanctions imposed. (*Id.* at 14, § VII.)

Olsen filed an administrative appeal of the DHO's decision to the Regional Director, asserting that he had asked the DHO to see the original paperwork. (Exhibits to Memorandum-Regional Administrative Remedy Appeal and Response (doc. 2-1) at 6-7.) Olsen complained to the Regional Director that the DHO relied on "generic black and white photocopies" of both the chain of custody form and the report of the lab results. (*Id.* at 6.) He asserted that copies "undermine and circumvent the security measures" and that "[f]ailure to produce the original forms or their carbon copies

4

demonstrate a clear break in the chain of custody." (*Id.* at 6-7.) His appeal was denied by the regional director on the basis that the original form was not required in order for a DHO to find that he used drugs. (*Id.* at 8.)

In Olsen's appeal to the Central Office, he asserted for the first time that the chain of custody form was "altered" with the use of a copy machine and that the form he signed had a number ending in "78," rather than "66." (Central Office Administrative Appeal BP-11 (doc. 2-1) at 9.)

B. No Denial of Due Process

As noted above, Olsen asserts that his right to due process was violated because the results of a urinalysis were intentionally altered by use of a copy machine to reflect a positive result. His due process rights, however, were not violated, and he is not entitled to relief.

In *Wolff v. McDonnell*, the Supreme Court identified the protections or procedures that a prison inmate may expect at a disciplinary hearing which results in a sanction affecting a liberty interest. An inmate charged with a violation must be given: (1) advance written notice of the charges at least 24 hours before the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence when the exercise of such rights would not be unduly hazardous to institution safety or correctional goals; (3) the opportunity to receive the assistance of a staff or inmate lay advocate in certain situations; and (4) a written statement by the factfinder as to the evidence relied on for the decision, and the reasons for the action. *Wolff v. McDonnell*, 418 U.S. 539, 563-71 (1974).

Upon review of a prison disciplinary action, a court must simply consider whether the decision of the prison authority was supported by "some facts" or "any evidence at all." *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981) (citation omitted). Due process does not require that the evidence in

such a proceeding eliminate all other possible conclusions. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56 (citations omitted). That is, if there are "some facts" or "any evidence at all" that support the action taken by prison officials, their decision must be upheld on federal habeas review. *Smith*, 659 F.2d at 545. The reporting staff member's incident report, standing alone, can constitute some evidence. *See Hudson v. Johnson*, 242 F.3d 534, 536-537 (5th Cir. 2001). "Federal courts cannot retry every prison disciplinary dispute; rather the court may only act where arbitrary or capricious action is shown." *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994).

In this case, there was evidence to support the DHO's decision. In addition to the reporting officer's statement, the incident report, and the positive urine sample results, Olsen admitted to the DHO that the signature on the chain of custody form for the urine sample was his. All of this evidence supported the DHO's decision.

Olsen's allegation that he requested original copies of the chain of custody form and the lab results throughout the discipline process is not supported by the record. There is nothing in the record of the DHO hearing that indicates that Olsen asked to see the originals of the forms at that time. But even when he raised the issue in his appeal to the Regional Director, other than raising a general challenge to the reliance on photocopies rather than a carbon copy, Olsen did not give a reason why the photocopies of those forms in *his* particular case should not be relied on. It was not until his Central Office appeal that he made an allegation that the chain of custody form was "altered" by use

6

of a copy machine. And although he asserted that the last two numbers on the chain of custody form given to the DHO were different than those on the form he signed, he did not give that information to the DHO or to the Regional Director. He also did not —and does not -- offer any reason why he failed to raise that specific issue earlier.

Olsen's unsubstantiated allegations fail to show that his due process rights were violated. "Where a disciplinary hearing does not otherwise violate a prisoner's rights, allegations of falsified evidence are not grounds for federal habeas relief." *Henderson v. Quarterman*, CA No. C-08-042, 2008 WL 3005476, at *10 (S.D. Tex. Aug. 1, 2008) (citing *Spellmon v. Price*, 100 F.3d 953, 1996 WL 625422, at *3 (5th Cir. Oct. 10. 1996) (internal citation omitted)). In his reply, Petitioner acknowledges that application of this enunciated standard would "hold water" to bar his claims, but questions the accuracy of the *Henderson* citation. Reply (doc. 17) at 3, Exhibit at 7. Petitioner's reference to another March 2008 order from the *Henderson* case is mistaken, as the above-referenced citation is an accurate reference to a Westlaw citation for an August 1, 2008 opinion of the district judge in the *Henderson v. Quarterman* case adopting the recommendation of a magistrate judge. *See Henderson*, 2008 WL 3005476, at **1-2, 10. Furthermore, absent some affirmative indication of error, a lab report and the chain of custody form can qualify as some evidence that an inmate violated the disciplinary code. *Webb v. Anderson*, 224 F.3d 649, 653 (7th Cir. 2000) (reviewing similar challenges to alleged inadequacies in a toxicology report and chain-of-custody form used as evidence to support a disciplinary charge for use of a narcotic). Further, the hypothetical possibility of tampering does not render evidence inadmissible, but goes instead to the weight of the evidence. *Id.* (citing *United States v. Brown*, 136 F.3d 1176, 1182 (7th Cir. 1998)).

## IV. CONCLUSION

Petitioner Olsen fails to show that there was no evidence to support the decision of the DHO, and as the record otherwise shows that he was provided the process required under *Wolff* and *Hill*, he is not entitled to relief and the § 2241 petition should be denied.

## V. RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the petition for writ of habeas corpus under § 2241 be **DENIED**.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.

Any party may object to this Report and Recommendation. A party who objects to any part of this Report and Recommendation must file specific written objections within fourteen (14) days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and identify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. The failure to file specific written objections will bar the aggrieved party from attacking on appeal the factual findings, legal conclusions, and recommendation set forth by the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds,* 28 U.S.C. § 631(b)(1) (extending the time to file objections from ten to fourteen days), *as recognized in ACS Recovery Servs., Inc. V. Griffin*, 676 F.3d 512, 521 n. 5 (5th Cir. 2012).

**SO ORDERED.**

Signed December 29, 2016.

_____
E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE